IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

LARRY DAVID DAVIS                                                                                  PLAINTIFF

v.                                          Civil No. 6:18-cv-6009

SHERIFF JASON WATSON; JAIL
ADMINISTRATOR DERRICK BARNES;
GUARD ALEX BOLZ; SAM BURDETTE;
and MASON SI ANDREW                                                                            DEFENDANTS

## ORDER

This case is before the Court for preservice screening under the provisions of the Prison Litigation Reform Act (PLRA). Pursuant to 28 U.S.C. § 1915A, the Court has the obligation to screen any complaint in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a).

### I. BACKGROUND

Plaintiff Larry David Davis filed his Complaint on January 12, 2018. (ECF No. 1). Plaintiff filed a completed IFP application on February 26, 2018. (ECF No. 10). He alleges his constitutional rights were violated while he was incarcerated in the Clark County Jail. (ECF No. 1 at 2). Plaintiff's Complaint lists five numbered claims, which the Court will now describe.

For Claim One, Plaintiff alleges he was denied medical care from July through December.[1] Plaintiff alleges he informed the guards that he had kidney damage and needed to see a doctor, but he was never taken to see anyone concerning his kidneys. Plaintiff names Defendants Barnes, Burdette, and "Mason SI Andrew" for this claim. (ECF No. 1 at 4). In an attachment to his

---

[1] Plaintiff does not provide specific information regarding this claim's time period, but his other claims are based on various time periods in 2017.

Complaint, Plaintiff alleges he was scheduled to see his normal doctor on July 1, 2017, but he missed the appointment because he had been arrested. Plaintiff alleges the last time he saw his normal doctor, she told him that if his kidneys did not improve, "she was going to send [him] to see a kidney specialist." (ECF No. 1 at 16). Plaintiff alleges his side hurts where his kidneys are located. (ECF No. 1 at 16).

For Claim Two, Plaintiff alleges he was denied hot food three times a day from May 19, 2017, through December 29, 2017, and notes that he is diabetic and suffers from high blood pressure. Plaintiff further states the meals consisted of cereal, fresh fruit, bologna or salami sandwiches on white bread, and a small bag of chips. (ECF No. 1 at 5). However, in the section for describing a custom or policy in relation to an official capacity claim, Plaintiff also alleges multiple other constitutional violations: there was no yard call from May 19, 2017, through October 20, 2017; no hot meals from May 19, 2017, through December 30, 2017; mold in the shower; no law library; no kitchen for hot meals; no doctor or nurse on staff; and no diabetic meals. Plaintiff further alleges all mail was read by staff, including legal mail; the toilets did not work; and there was no glass in the window of the cell he was sleeping in over the winter and it was freezing cold. Plaintiff alleges the building has been condemned, but prisoners are still being kept in it. (ECF No. 1 at 6). On additional pages attached to his Complaint, Plaintiff alleges eighty-five percent of the cell toilets did not work, and he had to go to another inmate's cell to use the toilet. (ECF No. 1 at 9). Plaintiff alleges the sink in his cell did not work, making it impossible for him to drink from it. (ECF No. 1 at 8).

Plaintiff alleges the weather was nice, but the inmates were kept inside and denied yard call simply because the guards could do so. (ECF No. 1 at 6, 10). Plaintiff further alleges he was denied a diabetic snack, and his sugar levels were in the fifties and sixties at night before lockdown.

When Plaintiff asked for a diabetic snack, he was allegedly given an apple. (ECF No. 1 at 15). For Claim Two, Plaintiff names Defendants Barnes, "Mason unknown," Burdette, Bolz, and Watson.[2] (ECF No. 1 at 5).

For Claim Three, Plaintiff alleges there was no law library and no law library call from May 19, 2017, through January 1, 2018. Plaintiff names Defendants Watson and Barnes for this claim. (ECF No. 1 at 6). Plaintiff alleges the facility "does not have a law library." Instead, he alleges there is a small room the size of a cell with 20 or 30 outdated books. He alleges there was no law library call for "the last 7 months." (ECF No. 1 at 6). Plaintiff alleges this affected him in the following way:

> I could do no research on my charge or my legal rights in they [sic] court which caused me not to be able to prepare myself for my rights it help [sic] them to violate the inmates rights not having a law library.

(ECF No. 1 at 6). Plaintiff alleges "they should have been having law library call at least once a week." (ECF No. 1 at 7).

On additional sheets of paper, Plaintiff labels allegations as Claims Four and Five. The text of these claims, however, appear to provide narrative concerning Plaintiff's Claims One and Two. (ECF No. 1 at 9-17). The Court will therefore not address these as separate claims.

Plaintiff proceeds against the Defendants for Claims One and Three in their official and individual capacities. (ECF No. 1 at 4, 6). Plaintiff proceeds against the Defendants in Claim Two in their official capacities only. (ECF No. 1 at 5). Plaintiff seeks compensatory and punitive damages. (ECF No. 1 at 7).

---

[2] The Court is unsure whether "Mason unknown" refers to Defendant "Mason SI Andrews," who was identified in Plaintiff's Claim One.

3

## II. LEGAL STANDARD

Under the PLRA, the Court is obligated to screen the case prior to service of process being issued. The Court must dismiss a complaint, or any portion of it, if it contains claims that: (1) are frivolous, malicious, or fail to state a claim upon which relief may be granted; or, (2) seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

A claim is frivolous if "it lacks an arguable basis either in law or fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A claim fails to state a claim upon which relief may be granted if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "In evaluating whether a *pro se* plaintiff has asserted sufficient facts to state a claim, we hold 'a *pro se* complaint, however inartfully pleaded . . . to less stringent standards than formal pleadings drafted by lawyers.'" *Jackson v. Nixon*, 747 F.3d 537, 541 (8th Cir. 2014) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)). However, even a *pro se* plaintiff must allege specific facts sufficient to support a claim. *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985).

## III. DISCUSSION

### A. Claim One – Denial of Medical Care

#### 1. Individual Capacity Claims

Plaintiff's individual capacity claim that Defendants Barnes, Burdette, and "Mason SI Andrews" did not take him to see a medical professional concerning his alleged kidney condition are subject to dismissal.

The Eighth Amendment prohibition of cruel and unusual punishment prohibits deliberate indifference to prisoners' serious medical needs. *Luckert v. Dodge Cnty.*, 684 F.3d 808, 817 (8th Cir. 2012). To prevail on his Eighth Amendment claim, Plaintiff must prove that Defendants acted

with deliberate indifference to his serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

The deliberate indifference standard includes "both an objective and a subjective component: 'The [plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.'" *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000) (quoting *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997)). To show that he suffered from an objectively serious medical need Plaintiff must show he "has been diagnosed by a physician as requiring treatment" or has an injury "that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Schaub v. VonWald*, 638 F.3d 905, 914 (8th Cir. 2011) (internal quotations and citations omitted). For the subjective prong of deliberate indifference, "the prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not give rise to the level of a constitutional violation." *Popoalii v. Corr. Med. Servs*, 512 F.3d 488, 499 (8th Cir. 2008) (internal citation omitted). "Deliberate indifference is akin to criminal recklessness, which demands more than negligent misconduct." *Id.*

Deliberate indifference may be manifested by "prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle*, 429 U.S. at 104-05. However, the "Constitution does not require jailers to handle every medical complaint as quickly as each inmate might wish." *Jenkins v. Cnty. of Hennepin, Minn.*, 557 F.3d 628, 633 (8th Cir. 2009). "A prisoner alleging a delay in treatment must present verifying medical evidence that the prison officials ignored an acute or escalating situation or that these delays adversely affected his prognosis." *Holden v. Hirner*, 663 F.3d 336, 342 (8th Cir. 2011) (internal quotations omitted). Unless, however, the need for medical attention is obvious to a

layperson, in which case the plaintiff need not submit verifying medical evidence to show the detrimental effects of delay. *See Schaub*, 638 F.3d at 919 (citing *Roberson v. Bradshaw*, 198 F.3d 645, 648 (8th Cir. 1999)); *Aswegan v. Henry*, 49 F.3d 461, 464 (8th Cir. 1995); *cf. Boyd v. Knox*, 47 F.3d 966, 969 (8th Cir. 1995) (noting that a delay in treatment, coupled with knowledge that an inmate is suffering, can support a finding of an Eighth Amendment violation).

Plaintiff has not met the subjective component of the test. Plaintiff has not alleged he presented to the guards with symptoms of an acute or escalating medical situation. Rather, he alleges only that he told them he had a kidney condition. Plaintiff does not allege that he required dialysis or any other treatment or medication for his condition; in fact, he alleges his own normal doctor had only discussed the possibility of sending him to a specialist if he did not show improvement in kidney function just prior to his arrest. Nor does Plaintiff provide any evidence that his kidney condition, or the prognosis for it, were negatively affected by any delay in seeing a medical professional about his kidney condition.

### 2. Official Capacity Claims

Plaintiff also asserts official capacity claims against Defendants Barnes, Burdette, and "Mason SI Andrews" in connection with his deliberate indifference claim. However, Plaintiff has alleged no custom or policy of Clark County which violated his constitutional rights. Therefore, Plaintiff fails to state a cognizable official capacity claim in connection with Claim One. *See Gorman v. Bartch*, 152 F.3d 907, 914 (8th Cir. 1998) (stating an official capacity claim requires "proof that a policy or custom of the entity violated the plaintiff's rights.").

### B. Claim Two – Conditions of Confinement

Plaintiff proceeds against Defendants Barnes, "Mason unknown," Burdette, Bolz, and Watson in their official capacities alone for Claim Two, regarding a variety of jail conditions.

"[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 851 (1998). The Eighth Amendment prohibits the imposition of cruel and unusual punishment. U.S. Const. amend. VIII. Detention centers must provide pretrial detainees with "reasonably adequate sanitation, personal hygiene, and laundry privileges." *Beaulieu v. Ludeman*, 690 F.3d 1017, 1045 (8th Cir. 2012). The Eighth Amendment also prohibits punishments that deprive inmates of the minimal civilized measure of life's necessities. *Smith v. Copeland*, 87 F.3d 265, 268 (8th Cir. 1996); *see also Hall v. Dalton*, 34 F.3d 648, 650 (8th Cir. 1994) ("[I]n this circuit, the standards applied to Eighth Amendment and Fourteenth Amendment claims have been the same.").

A prisoner alleging an Eighth Amendment violation must prove both an objective and subjective element. *See Revels v. Vincenz*, 382 F.3d 870, 875 (8th Cir. 2004). "The defendant's conduct must objectively rise to the level of a constitutional violation by depriving the plaintiff of the minimal civilized measure of life's necessities. The defendant's conduct must also reflect a subjective state of mind evincing deliberate indifference to the health or safety of the prisoner." *Id.* (citations and internal quotation marks omitted). Deliberate indifference is established when the Plaintiff shows that "the defendant was substantially aware of but disregarded an excessive risk to inmate health or safety." *Id.* The standards against which a court measures prison conditions are "the evolving standards of decency that mark the progress of a maturing society." *Estelle*, 429 U.S. at 102. The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones. *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994).

As is the case with all Eighth Amendment claims, a prisoner must suffer some actual injury in order to receive compensation. This injury must be greater than *de minimis*. *Irving v. Dormire*, 519 F.3d 441, 448 (8th Cir. 2008).

Plaintiff's allegations that the Clark County Jail did not provide a diabetic diet and he suffered from blood sugar levels as low as the "fifties or sixties" as a result, states a plausible official capacity claim sufficient to survive screening. Likewise, Plaintiff's claim that he was forced to sleep in a cell in which the window glass was missing and the cell was open to the elements during cold weather also states a plausible official capacity claim. As discussed below, Plaintiff's other conditions-of-confinement claims set out in Claim Two are subject to dismissal.

Plaintiff alleges that he received no hot meals from May 19, 2017, through December 30, 2017. An inmate has no constitutional right to hot food. "Constitutional standards require only that prison authorities provide an inmate with well-balanced meals, containing sufficient nutritional value to preserve health." *Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999) (internal quotation marks and citation omitted). The provision of only cold food does not violate the Constitution. *See Brown-El v. Delo*, 969 F.2d 644, 648 (8th Cir. 1992) ("We agree with the district court that Brown-El's claim that his constitutional rights were violated when he was served cold food is frivolous."); *Smith*, 892 F. Supp. at 1229 (holding that a diet of only cold food, in and of itself, does not offend the Constitution). Plaintiff's assertions that he was not served hot meals, without more, fails to state a cognizable claim.

Plaintiff alleges that eight-five percent of the toilets were nonfunctional, and he had to go to another cell to use one. This alleges only an inconvenience, not an Eighth Amendment violation. *See Patchette v. Nix*, 952 F.2d 158, 163 (8th Cir. 1991) (affirming district court's finding that one toilet per twenty-four inmates was an inconvenience, not an Eighth Amendment violation.)

Plaintiff's allegation that he was denied yard call fails to state a plausible claim. A constitutional violation can exist if prison officials are deliberately indifferent to an inmate's exercise needs. *Wishon v. Gammon*, 978 F.2d 446, 449 (8th Cir. 1992). A "lack of exercise may be a constitutional violation if one's muscles are allowed to atrophy or if an inmate's health is threatened." *Id.* Plaintiff did not allege that he was denied exercise; only that he was denied yard call. Plaintiff did not allege he suffered muscle atrophy or damage to his health as a result of being denied yard call. Thus, Plaintiff failed to state a cognizable claim regarding this allegation.

Plaintiff alleges that mold was present in the shower. However, Plaintiff failed to allege that he suffered any injury as a result of the alleged presence of mold in the shower. Therefore, he failed to allege an Eighth Amendment claim. *See Irving*, 519 F.3d at 448 (stating a prisoner must suffer an actual injury to state an Eighth Amendment claim).

Plaintiff's allegation that the facility did not have a doctor or nurse on staff fails to state a plausible claim. A prison does have a duty to "promptly provide necessary medical treatment for prisoners," including access to 24-hour emergency care. *Johnson v. Bowers*, 884 F.2d 1053, 1056 (8th Cir. 1989). This Court, however, is unaware of any binding authority requiring a county jail to have in-house medical staff on hand to provide care for inmates twenty-four hours a day, seven days a week.

Plaintiff's allegation that the sink in his cell was broken and did not provide drinking water fails to state a plausible claim. Access to a sufficient quality and quantity of water for drinking and basic personal hygiene is, of course, a minimal life necessity. *See, e.g.*, *Scott v. Carpenter*, 24 F. App'x 645, 647 (8th Cir. 2001) (no disagreement that basic personal hygiene falls within the minimal civilized measure of life's necessities) (unpublished); *Spires v. Paul*, 581 F. App'x 786, 792-94 (11th Cir. 2014) (finding a cognizable Eighth Amendment claim where an inmate was

9

housed in a cell without potable water for several days, forcing him to drink from the toilet to survive). However, "[n]othing in the Constitution requires that each prisoner be provided with clean, cold, warm, or any other form of running water in his cell. . . ." *Jelinek v. Roth*, 33 F.3d 56, *2 (7th Cir. 1994) (plumbing in cell that produced only water contaminated with rust that was undrinkable and unsuitable for bathing does not implicate the Eighth Amendment) (unpublished); *Narducci v. Fields*, 62 F.3d 1428, *1 (10th Cir. 1995) (finding "a lack of light, a lack of running water, poor cell ventilation, and placement in an individual cage for outdoor exercise" did not rise to level of constitutional violation) (unpublished); *see also Smith*, 892 F. Supp. at 1230 (finding that a jail's turning off water in a cell except for brief periods to flush the toilet, and providing drinking water with each meal did "not deprive plaintiff of minimally necessary drinking water or hygienic requirements"); *Downs v. Carter*, No. 13-C-3998, 2016 WL 1660491, at *8 (N.D. Ill. Apr. 27, 2016) ("There is no constitutional right to water on demand."). Plaintiff does not allege that he was denied water altogether; he only alleges that the broken sink in his cell did not provide him drinkable water. Therefore, Plaintiff fails to state a cognizable claim regarding this allegation.

**C. Claim Three – Law Library**

Although Plaintiff proceeds against Defendants Watson and Barnes in both their individual and official capacities for this claim, he fails to affirmatively link any actions or inactions to either of these Defendants. *See Rizzo v. Goode*, 423 U.S. 362, 371-72, 377 (1976); Fed. R. Civ. P. 8. He therefore alleges only an official capacity claim concerning the law library.

Plaintiff alleges that the law library at the facility consists of a small room with outdated law books. He alleges that due to this, he could do no research on his charge or on his legal rights. These allegations concerning a small and outdated law library at the facility, as well as lack of "law library call," fail to state a plausible claim. The Supreme Court has held "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the

preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Bounds v. Smith*, 430 U.S. 817, 828 (1977).

Nevertheless, *Bounds* "did not create an abstract, freestanding right to a law library or legal assistance." *Lewis v. Casey*, 518 U.S. 343, 351 (1996). Instead, prison officials must provide inmates with "meaningful access to the courts," *Bounds*, 430 U.S. at 824, and providing a law library is merely one way to comply with this obligation. *See Bear v. Fayram*, 650 F.3d 1120, 1123 (8th Cir. 2011) (stating the constitutional requirement of access to the courts may be satisfied in a number of ways including, prison libraries, jailhouse lawyers, private lawyers on contract with the prison, or some combination of these and other methods). However, an inmate has no standing to pursue an access claim unless he can demonstrate he suffered prejudice or actual injury because of the prison officials' conduct. *See Lewis*, 518 U.S. at 351-52; *see also Farver v. Vilches*, 155 F.3d 978, 979-980 (8th Cir. 1998) (per curiam); *Klinger v. Dep't of Corr.*, 107 F.3d 609, 617 (8th Cir. 1997) (stating that to prevail on access-to-courts claim, inmate must show actual injury or prejudice even if denial of access to library is complete and systematic); *McMaster v. Pung*, 984 F.2d 948, 953 (8th Cir. 1993). The Eighth Circuit has instructed:

> To prove a violation of the right of meaningful access to the courts, a prisoner must establish the state has not provided an opportunity to litigate a claim challenging the prisoner's sentence or conditions of confinement in a court of law, which resulted in actual injury, that is, the hindrance of a nonfrivolous and arguably meritorious underlying legal claim."

*Hartsfield v. Nichols*, 511 F.3d 826, 831 (8th Cir. 2008).

Here, Plaintiff has alleged that the small library prevented him from researching his charge and his legal rights. However, Plaintiff has not identified a nonfrivolous and arguably meritorious legal claim that he was hindered from pursuing, nor has he alleged that he suffered any actual injury or prejudice as a result of the allegedly substandard law library. Plaintiff does not allege

11

that he was denied access upon request to the law library, but only that there was a lack of a weekly "law library call." Thus, Plaintiff fails to state a cognizable claim regarding access to the courts.

## IV.  CONCLUSION

For the above-discussed reasons, the Court finds that Plaintiff's official capacity claims against Defendants Watson, Barnes, Bolz, Burdette, and Mason concerning the diabetic meals and cell windows without glass shall remain for further consideration.[3]  Plaintiff's other claims are hereby **DISMISSED WITHOUT PREJUDICE**.  Service will be addressed in a separate order.

**IT IS SO ORDERED**, this 9th day of April, 2018.

/s/ Susan O. Hickey
Susan O. Hickey
United States District Judge

---

[3] "Claims against individuals in their official capacities are equivalent to claims against the entity for which they work." *Hafer v. Melo*, 502 U.S. 21, 24-27 (1991).  Thus, Plaintiff's official capacity claims against Defendants Watson, Barnes, Bolz, Burdette, and Mason are all essentially the same claim against Clark County, Arkansas.  It is therefore duplicative to separately serve Defendants Watson, Barnes, Bolz, Burdette, and Mason for what is effectively the same official capacity claim against Clark County.  *See Veatch v. Bartels Lutheran Home*, 627 F. 3d 1254, 1257 (8th Cir. 2010) (affirming dismissal of "redundant" official capacity claim).  Accordingly, Plaintiff's official capacity claims against Defendants Bolz, Burdette, and Mason concerning diabetic meals and window-less cells are hereby **DISMISSED**.