IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

LARRY DAVID DAVIS                                                               PLAINTIFF

v.                              Civil No. 6-18-CV-06009

SHERIFF JASON WATSON and JAIL                      DEFENDANTS
ADMINISTRATOR DERRICK BARNES

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

This is a civil rights action provisionally filed pursuant to 42 U.S.C. § 1983. Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3)(2011), the Honorable Susan O. Hickey, Chief United States District Judge, referred this case to the undersigned for the purpose of making a Report and Recommendation.

Currently before the Court is Defendants' Motion for Summary Judgment. (ECF Nos. 49, 50, 51).

**I. BACKGROUND**

Plaintiff filed his Complaint on January 12, 2018. (ECF No. 1). Plaintiff alleges his constitutional rights were violated while he was incarcerated in the Clark County Detention Center ("CCDC") from May 19, 2017, through December 29, 2017. (ECF No. 1 at 2). As required by the PLRA, Plaintiff's Complaint was screened prior to service, and several of the Defendants and claims dismissed on April 9, 2018. (ECF No. 13). Two of Plaintiff's official capacity claims remain. Plaintiff alleges he has diabetes and high blood pressure. (ECF No. 1 at 5). Plaintiff alleges CCDC does not provide a diabetic diet and he suffered from blood sugar levels as low as the "fifties or sixties" as a result. (ECF No. 1 at 15). He alleges the meals consisted of cereal, fresh fruit, bologna or salami sandwiches on white bread, and a small bag of chips. A "TV dinner"

1

was occasionally provided. (*Id*. at 5). Plaintiff states his free-world doctor told him not to eat white bread or pork, and all the meals were white-bread sandwiches with pork cold-cuts. He therefore traded his sandwiches for the bags of potato chips which came with the meals and ate those instead. (*Id*. at 12). He alleges that when he asked for a diabetic snack he was given an apple. (*Id*. at 15). He states the jail administrator used to let his family send him diabetic snack packages, but they told him that he could not have another diabetic snack box from his family, so he is stuck in a cell with nothing to eat if his blood sugar gets too low. (*Id*. at 14, 17).

Plaintiff also alleges he was forced to sleep in a cell in which the window glass was missing, leaving the cell was open to the elements during cold weather. (*Id*. at 6). Plaintiff seeks compensatory and punitive damages. (*Id*. at 7).

Defendants filed their Motion for Summary Judgment on December 19, 2018. (ECF Nos. 49, 50, 51). On December 20, 2018, the Court entered an Order directing Plaintiff to file his Response to the Motion. (ECF No. 52). Defendants filed a Supplement containing an executed affidavit from Defendant Barnes on December 31, 2018. (ECF No. 53). Plaintiff filed his Response on January 14, 2019. (ECF Nos. 54, 55).

## II.  LEGAL STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *National Bank of Commerce v. Dow Chemical Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *National Bank*, 165 F.3d at 607 (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id*. (*citing, Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### III. ANALYSIS

Defendants argue summary judgment in their favor is appropriate because: (1) there was no policy, practice, or custom of CCDC that resulted in deliberate indifference to Plaintiff's diabetic needs; (2) the window in question was covered with plexiglass, there was heat in the cell, and Plaintiff failed to file any grievances concerning his conditions of confinement. (ECF No. 50 at 5-15).

Plaintiff argues the facility lacks a kitchen or food preparation area and does not have a dietician, resulting in the failure to provide his diabetic diet. (ECF No. 55 at 1). He points to two facility inspection reports from 2017 and 2018 and argues that the reports prove that his complaints are "correct and true." (*Id*. at 1).

Plaintiff's remaining claims are against Defendant in their official capacity alone. Under Section 1983, a defendant may be sued in either his individual capacity, or in his official capacity, or in both. In *Gorman v. Bartch,* 152 F.3d 907 (8th Cir. 1998), the Eighth Circuit Court of Appeals discussed the distinction between individual and official capacity suits. As explained by the Court in *Gorman*:

> "Claims against government actors in their individual capacities differ from those in their official capacities as to the type of conduct that is actionable and as to the type of defense that is available. *See Hafer v. Melo,* 502 U.S. 21, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991). Claims against individuals in their official capacities are equivalent to claims against the entity for which they work; they require proof that a policy or custom of the entity violated the plaintiff's rights, and the only type of immunity available is one belonging to the entity itself. *Id.* 502 U.S. at 24-27, 112 S.Ct. at 361-62 (1991). Personal capacity claims, on the other hand, are those which allege personal liability for individual actions by officials in the course of their duties; these claims do not require proof of any policy and qualified immunity may be raised as a defense. *Id.* 502 U.S. at 25-27, 112 S.Ct. at 362."

*Gorman,* 152 F.3d at 914.

### A. Diabetic Diet

Plaintiff's allegation that he was denied a medically appropriate diabetic diet is contradicted by the evidence. The Eighth Amendment prohibition of cruel and unusual punishment prohibits deliberate indifference to prisoners' serious medical needs. *Luckert v. Dodge County*, 684 F.3d 808, 817 (8th Cir. 2012). To prevail on his Eighth Amendment claim, Plaintiff must prove that Defendants acted with deliberate indifference to his serious medical needs. *Estelle v. Gamble,* 429 U.S. 97, 106 (1976).

The deliberate indifference standard includes "both an objective and a subjective component: 'The [Plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.'" *Jolly v. Knudsen,* 205 F.3d 1094, 1096 (8th Cir. 2000) (quoting *Dulany v. Carnahan,* 132 F.3d 1234, 1239 (8th Cir. 1997)).

To show that he suffered from an objectively serious medical need Plaintiff must show he "has been diagnosed by a physician as requiring treatment" or has an injury "that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Schaub v. VonWald*, 638 F.3d 905, 914 (8th Cir. 2011) (citation omitted).

For the subjective prong of deliberate indifference, "the prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not give rise to the level of a constitutional violation." *Popoalii v. Correctional Med. Servs,* 512 F.3d 488, 499 (8th Cir. 2008) (citation omitted). "Deliberate indifference is akin to criminal recklessness, which demands more than negligent misconduct." *Id*.

It is well settled that "[a] prisoner's mere difference of opinion over matters of expert medical judgment or a course of medical treatment fail[s] to rise to the level of a constitutional violation." *Nelson v. Shuffman,* 603 F.3d 439, 449 (8th Cir. 2010) (internal citation omitted). An "inmate must clear a substantial evidentiary threshold to show the prison's medical staff deliberately disregarded the inmate's needs by administering inadequate treatment." *Id.* (internal citations omitted). Despite this, issues of fact exist when there is a question of whether or not medical staff exercised independent medical judgment, and whether the decisions made by medical staff fell so far below the reasonable standard of care as to constitute deliberate indifference. *See Smith v. Jenkins,* 919 F.2d 90, 93 (8th Cir. 1990).

Deliberate indifference may also be manifested by "prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle,* 429 U.S. at 104–05. However, the "Constitution does not require jailers to handle every medical complaint as quickly as each inmate might wish." *Jenkins v. County of Hennepin, Minn.,* 557 F.3d 628, 633 (8th Cir. 2009). "A prisoner alleging a delay in treatment must present verifying medical evidence that the prison officials 'ignored an acute or escalating situation or that [these] delays adversely affected his prognosis[,]'" *Holden v. Hirner*, 663 F.3d 336, 342 (8th Cir. 2011) (citations omitted), unless the need for medical attention is obvious to a layperson, in which case the plaintiff need not submit verifying medical evidence to show the detrimental effects of delay.

*See Schaub,* 638 F.3d at 919 (citing *Roberson v. Bradshaw*, 198 F.3d 645, 648 (8th Cir. 1999)); *Aswegan v. Henry,* 49 F.3d 461, 464 (8th Cir. 1995); *cf. Boyd v. Knox*, 47 F.3d 966, 969 (8th Cir. 1995) ("noting that a delay in treatment, coupled with knowledge that an inmate is suffering, can support a finding of an Eighth Amendment violation").

There is no dispute that Plaintiff's diabetes meets the objective first prong of the deliberate indifference standard. There is no evidence, however, that any policy, practice, or custom of CCDC met the subjective second prong of the deliberate indifference standard.

Defendant Barnes, the CCDC Administrator, provided an affidavit stating the meals in CCDC are prepared according to a prescribed menu approved by a dietician according to Arkansas Jail Standards. Inmates with specific dietary needs are examined and followed by the CCDC medical staff, who specify any necessary changes to the menu. (ECF No. 53-1 at 2). Meals are prepared by a CCDC employee, and any alterations to the menu are also prepared by that employee. (*Id*.). When ordered by jail medical staff, any snacks or extra food items for an inmate are kept in an easily accessible area. (*Id*.). It is the policy of CCDC that any Medical Grievance forms are reviewed by qualified medical personnel. (*Id*.). Each time Plaintiff submitted a medical grievance it was reviewed by Nurse Practitioner Cassie Gonzales. (*Id*.). "All decisions regarding medications, medical testing, or medical treatment are left to the professional judgment of the physician at the detention facility." (*Id*. at 3). Medical staff do not consult with CCDC staff prior to prescribing medication or treatment. (*Id*.).

Nurse Practitioner Gonzales provided an affidavit stating she regularly examined and treated Plaintiff with regard to his diabetes and high blood pressure. (ECF No. 51-9 at 1). She did not recommend significant changes to the menu served to Plaintiff "because the menu was appropriate for the symptoms [Plaintiff] presented." (*Id*.). When Plaintiff complained of dropping

blood sugar levels in the evening, she recommended that he not take his Glipizide medication if his blood sugar reading was below 100. She also directed jail staff to keep peanut butter on hand and give him a scoop of peanut butter if his blood sugar became too low, which was done by jail staff. (*Id*. at 2). When Plaintiff's family sent him a box of snacks which were not healthy for him, such as candy, she withheld those items as a medical precaution. (*Id*.). When Plaintiff made a request related to his medical or dietary needs, it was addressed promptly. (*Id*.). Plaintiff's treatment was medically appropriate and appears to have addressed his complaints. (*Id*.). There is no medical evidence of any injury or damage caused to Plaintiff by the diet provided at CCDC or the refusal to provide him with sugary snacks sent to him by his family. (*Id*.). She does not consult with CCDC staff regarding medical treatment. All matters regarding heath services or changes to diet are the sole province of the medical personnel at CCDC. (*Id*. at 2).

      Defendants provided copies of the medical grievances filed by Plaintiff. On June 26, 2018, Plaintiff indicated he needed his medications refilled. This was approved the same day. (ECF No. 51-3 at 1). On August 12, 2018, Plaintiff stated he needed to see a doctor concerning his diabetes and his kidneys. His request was sent to medical, and it appears he was seen on August 14, 2017, although the signature is not legible. (*Id.* at 2). A medical record dated August 14, 2018, stated Plaintiff refused to lower his Glipizide dose. Jail staff were instructed to include a scoop of peanut butter to Plaintiff's evening medical call. The instructions further stated Plaintiff could hold the Glipizide if his blood sugar was under 100. (ECF No. 51-4 at 3). On November 24, 2017, Plaintiff grieved that he had not been given the diabetic snack box sent by his family. The response on November 27, 2017, stated his request would be reviewed by the staff physician. (*Id*. at 3). In an undated grievance, Plaintiff stated he did not receive commissary items he ordered. The response

stated the doctor did not permit him to have the things that were detrimental to his health due to his medical issues. (*Id*. at 5).

In his deposition, Plaintiff testified he was permitted to check his blood sugar by going to the control booth and using the machine set up there. He did so at least once daily, but usually more, up to five or six times a day. (ECF No. 51-8 at 26-27, 49). He testified that they did not always have diabetic snacks on hand if he needed one, but they started going across the street to where they got the food and would bring things like apples back. (*Id*. at 27). Plaintiff believed that potato chips were better for him than the bread and pork in the sandwiches, which was why he traded his sandwiches. (*Id*. at 38-39). His free-world doctor had told him not to eat white bread or pork. (*Id*. at 22). He often traded his entire meal for chips. (*Id*. at 39). Plaintiff agreed that Nurse Gonzales told him he could lower his Glipizide dose to once a day, but he did not want to do so because his free-world doctor had told him to take it twice a day. (*Id*. at 39-42). Plaintiff believed that the temperature of the food also affected his diabetes; that cold food was not good for diabetes. (*Id*. at 43). Once Plaintiff was transferred to the Arkansas Department of Correction, his Glipizide dose was reduced to once a day. Plaintiff believes this "worked better because they serve hot food and they do serve food to eat. We get three hot meals a day." (*Id*. at 44-45).

In his Response, Plaintiff notes the inspection reports of the facility indicate that it does not have a "inside" kitchen or food preparation area. (ECF No. 55 at 6, 14). He further notes that menus are not approved by a dietician. (*Id*. at 8, 17). Given the evidence in the record, neither of these notations in the inspection reports create a material factual dispute concerning the medical appropriateness of the meals provided to Plaintiff.

Plaintiff's allegations are therefore contradicted by the record. Nothing in the record indicates that CCDC had a policy, practice, or custom of which resulted in Plaintiff being served

medically inappropriate meals. Instead, Plaintiff's meals were reviewed and approved by a nurse practitioner. His grievances concerning his health were addressed promptly, and a medication adjustment recommended, but Plaintiff refused to implement that recommendation. Plaintiff was permitted to check his blood sugar multiple times daily, and staff provided a snack when he needed one, leaving the facility if necessary to obtain one. Plaintiff's mere disagreement with the diabetic diet provided at CCDC does not rise to the level of a constitutional violation. *See Nelson,* 603 F.3d at 449 ("[a] prisoner's mere difference of opinion over matters of expert medical judgment or a course of medical treatment fail[s] to rise to the level of a constitutional violation.").

There is no genuine dispute as to any material fact concerning Plaintiff's diabetic diet, and Defendants are entitled to summary judgment as a matter of law on this issue.

### B. Cell Window and Temperature

Plaintiff failed to exhaust his administrative remedies concerning any conditions of confinement and his allegations are contradicted by the record.

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is mandatory. *Porter v. Nussle*, 534 U.S. 516, 524-25 (2002). "[T]o properly exhaust administrative remedies prisoners must complete the administrative review process in accordance with the applicable procedural rules." *Jones v. Bock*, 549 U.S. 199, 218 (2007) (internal quotation marks and citation omitted). The "level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id*. A prisoner's remedies are exhausted "when

[the] inmate pursues the prison grievance process to its final stage and receives an adverse decision on the merits." *Hammett v. Cofield*, 681 F.3d 945, 947 (8th Cir. 2012).

Here, Plaintiff alleged in his Complaint that he filed grievances but never got any responses back. (ECF No. 1 at 2). In his deposition, he first testified he filed grievances about his body temperature due to his blood sugar issues. ((ECF No. 51-8 at 55-56). He then testified he thought he had filed two grievances concerning the temperature in the cell. (*Id*. at 56). Plaintiff did not provide any copies of grievances concerning the temperature in the cell with either his Complaint or his Response. Although Defendants were able to find and provide copies of his medical grievances, they were not able to find any concerning his cell temperature. (ECF No. 50 at 14). Plaintiff therefore failed to exhaust his administrative remedies concerning the cell temperature. *See McLanahan*, 2016 WL 520983, at *6 (citing *Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 222 (3d Cir. 2015) ("Conclusory, non-specific statements in an affidavit or verified complaint" are insufficient to survive summary judgment.").

Even if the Court assumes *arguendo* that Plaintiff did exhaust his administrative remedies, his allegations are contradicted by the record. While Plaintiff's cell window may not have had glass, it was covered with wire mesh and a plexiglass panel. It was not, as Plaintiff alleges, open to the elements. (ECF No. 53-1 at 4; 51-6). The facility heating system was operational. (ECF No. 53-1 at 3). Plaintiff is correct that the inspection reports indicated that, due to the age of the facility, there are ongoing issues with plumbing and climate control. (ECF No. 51-7 at 11). However, neither the 2017 or 2018 report indicated that temperature maintenance was out of compliance. (ECF 51-7 at 7, 16). Defendant Barnes stated in his affidavit that the facility was found to be in compliance with Arkansas Jail Standards in both 2017 and 2018. (ECF No. 53-1 at 2). Both the 2017 and 2018 inspection reports relied upon by Plaintiff commended the CCDC

staff for doing a very good job within the physical limitations of the facility. (ECF No. 51-7 at 2,11). Plaintiff 's allegations that CCDC had a policy, practice, or custom which resulted in him being housed in a cell open to the elements in cold weather is therefore contradicted by the evidence.

There is no genuine dispute as to any material fact concerning Plaintiff's cell window and temperature and Defendants are entitled to summary judgment as a matter of law on this issue.

### IV.  CONCLUSION

Accordingly, I recommend that Defendants' Motion for Summary Judgment (ECF No. 49) be GRANTED and Plaintiff's Complaint be DISMISSED WITH PREJUDICE.

**The parties have fourteen days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

**DATED** this **25th day of June 2019**.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
UNITED STATES MAGISTRATE JUDGE